**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| **EUGENE SCALIA**, Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>**ADVANCED DISPOSAL SERVICES**<br>**SOLID WASTE MIDWEST, LLC,**<br><br>Defendant. | :<br>:<br>:<br>:<br>:     CASE NO.<br>:<br>:<br>:<br>:<br>:<br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**COMPLAINT**

Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor ("the

Secretary"), brings this action for injunctive and other relief pursuant to the provisions of section

11(c) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(c) [hereinafter

referred to as "the Act"].

**I.**

1.      Jurisdiction over this action is conferred on this Court pursuant to section 11(c)(2)

of the Act, 29 U.S.C. § 660(c)(2), and by 28 U.S.C. §§ 1331 and 1345.

**II.**

2.      Defendant **ADVANCED DISPOSAL SERVICES SOLID WASTE**

**MIDWEST, LLC** ("ADS"), doing business as Advanced Disposal, is now, and at all times

material herein, was a limited liability company engaged in waste collection and management

services within the state of Illinois.  ADS maintains and conducts business at 2800 Shermer

Road, Northbrook, IL 60062 ("Northbrook location"), within the jurisdiction of this Court.

3.    Defendant was, at all times material herein, a "person," as defined by section 3(4) of the Act, codified at 29 U.S.C. § 652(4), and an "employer," as defined by section 3(5) of the Act, codified at 29 U.S.C. § 652(5).

## III.

4.    William Glass was employed by Defendant from at least March 24, 2014, to September 13, 2016, as a roll-off driver.  Mr. Glass worked at Defendant's Melrose Park location from March 24, 2014, to approximately June 5, 2016, when he was transferred to the Northbrook location.

5.    Mr. Glass was, at all times material herein, an employee who was employed by an employer as defined by sections 3(5) and 3(6) of the Act, codified at 29 U.S.C. § 652(5), (6).

6.    On September 6, 2016, Mr. Glass wrote up in a driver vehicle inspection report a safety hazard consisting of a gap between the lift gate and truck bed of container truck #246002. Mr. Glass also reported his concern to his supervisor, Route Manager Trent Hasley.  The condition was not fixed and Mr. Hasley assigned another driver to use container truck #246002.

7.    On September 7, 2016, Mr. Hasley assigned Mr. Glass to operate a rear-load garbage truck, #244014, which Mr. Glass had never driven before, on a residential route.

8.    On September 7, 2016, while operating rear-load garbage truck #244014, Mr. Glass injured his left pinky finger when a garbage can (or "toter") was thrown off the truck's tipper and hit his hand.

9.    Immediately after his injury occurred, Mr. Glass reported it to Mr. Hasley.  Mr. Glass's injury was thereafter reported to Route Manager Michael Renbarger and Operations Manager Roger Peloquin.  Mr. Glass was directed to write up an incident report before being transported to a medical clinic for treatment of his injury.

10.    As a result of the work-related injury, Mr. Glass received medical treatment and was only able to perform light-duty work on September 8, 9, and 12, 2016.

11.    Defendant's employee handbook dictates when an injury occurs, management will review the injury, with the input of the involved employee, to determine "preventability." The employee handbook defines a preventable incident as "one in which the employee failed to do everything he/she possibly could to prevent the incident from occurring."

12.    On or about September 7 or 9, 2016, Defendant interviewed Mr. Glass in Mr. Peloquin's office regarding Mr. Glass's injury. Mr. Glass was never taken to the actual truck on which he was injured to explain or demonstrate how the injury occurred.

13.    On September 8, 2016, Defendant determined Mr. Glass's injury was "preventable," documented in a "Preventability Analysis."

14.    The following day, on September 9, 2016, Mr. Renbarger drafted an "Employee Incident Report" about the meeting with Mr. Glass in Mr. Peloquin's office.

15.    At all material times herein, Defendant utilized a "Compliance Hotline" employees could call to report work-related concerns, including safety issues.

16.    On September 8, 2016, Defendant received an anonymous complaint on the "Compliance Hotline" reporting safety issues with multiple trucks at the Northbrook facility and that Route Manager Trent Hasley was aware of the issues but was not doing anything about them. The anonymous caller also reported Mr. Glass's safety concerns with the container truck (#246002), the assignment of another driver to operate the container truck after Mr. Glass reported it unsafe, and Mr. Glass's injury on a different truck. The caller recommended Mr. Hasley receive disciplinary action for knowingly putting drivers in harm's way.

3

17.     Human Resources Manager Jackie Doll investigated the hotline complaint by interviewing drivers and managers at the Northbrook location.

18.     Ms. Doll is also responsible for reviewing final warnings, suspensions, and terminations across ADS's Midwest Region, including the Northbrook location.

19.     On September 9, 2016, Ms. Doll interviewed Mr. Glass regarding the anonymous hotline complaint.  Mr. Glass reported his safety concerns about the container truck.  Ms. Doll also asked Mr. Glass about his injury during this interview.  Ms. Doll suspected Mr. Glass made the anonymous hotline complaint.

20.     Defendant utilizes a progressive disciplinary policy.  The progression of discipline begins with a written warning, followed by a suspension without pay (1-5 days depending on severity of the violation), and followed by discharge.  The progressive disciplinary policy applies to employees on a rolling 12-month basis.

21.     On September 13, 2016, Defendant terminated Mr. Glass, concluding his "preventable" injury warranted discipline, which was his third disciplinary action in the prior 12 months.  Ms. Doll, Mr. Peloquin, and General Manager Steve Rooney were involved in the decision to terminate Mr. Glass.

22.     On or about September 16, 2016, container truck #246002 (about which Mr. Glass had previously complained) was taken out of service to repair the gap between the lift gate and truck bed.

23.     On September 28, 2016, Mr. Glass contacted OSHA regarding discrimination by ADS.  On October 7, 2016, Mr. Glass timely filed a formal complaint with OSHA alleging Defendant discriminated against him in violation of section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1), by terminating him for engaging in protected activity.

4

24.     The Secretary subsequently investigated Mr. Glass's complaint in accordance with section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), and determined Defendant violated Section 11(c)(1) of the Act.

**IV.**

25.     As a consequence of the complaint Mr. Glass made to Defendant about the safety of the container truck, the report Mr. Glass made to Defendant about his workplace injury, and Defendant having perceived Mr. Glass filed the anonymous safety complaint, Defendant discriminated against Mr. Glass by terminating his employment. Defendant has failed and refused and continues to fail and refuse to reinstate Mr. Glass and compensate him for the time he should have continued to work for Defendant.

26.     By the facts described in Paragraphs 1 through 25 above, Defendant did discriminate and is discriminating against Mr. Glass because of his exercise of rights under, or related to, the Act. Defendant thereby did engage in, and is engaging in, conduct in violation of section 11(c) of the Act, 29 U.S.C. § 660(c).

**WHEREFORE**, cause having been shown, the Secretary prays for judgment:

A.     Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, and those persons in active concert or participation with it, from violating the provisions of § 11(c) of the Act, 29 U.S.C. § 660(c);

B.     Ordering Defendant to make William Glass whole by (1) offering reinstatement to Mr. Glass to his former position, or in lieu of reinstatement, providing him with front pay in an amount to be determined at trial; (2) reimbursing Mr. Glass for lost wages and benefits that resulted from his termination, with interest thereon from the date due until paid; and (3)

5

expunging from all personnel and company records references to the circumstances giving rise to

Mr. Glass's unlawful termination;

      C.      Ordering Defendant to make William Glass whole by providing compensation to

reimburse for any costs, expenses, and/or other pecuniary losses he incurred as a result of

Defendant's discriminatory actions;

      D.      Ordering Defendant to make William Glass whole by providing compensation for

any non-pecuniary losses, including emotional pain and suffering;

      E.      Ordering the posting of notice for employees stating Defendant will not in any

manner discriminate against any employee for engaging in activities protected by section 11(c)

of the Act, 29 U.S.C. § 660(c);

      F.      Awarding the Secretary the costs of this action; and

      G.      Ordering such further relief as is appropriate and just.

Respectfully submitted,

**KATE S. O'SCANNLAIN**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St, Rm. 844
Chicago, IL  60604
Telephone: (312) 353-1218
Facsimile:  (312) 353-5698
E-mail: worden.brooke.e@dol.gov
Bar No.: 6299672 (IL)

/s/ Brooke E. Worden
**BROOKE E. WORDEN**
Senior Trial Attorney

Attorneys for **EUGENE SCALIA,**
Secretary of Labor, United States
Department of Labor, Plaintiff