**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**MILTON AL STEWART**, Acting Secretary of Labor, United States Department of Labor,

Plaintiff,

vs.

ADVANCED DISPOSAL SERVICES SOLID WASTE MIDWEST, LLC,

Defendant.

Case No. 1:20-cv-06967

Honorable Manish S. Shah

**ADVANCED DISPOSAL SERVICES SOLID WASTE MIDWEST, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT OF EUGENE SCALIA**

Defendant, Advanced Disposal Services Solid Waste Midwest, LLC ("ADS"), for its Answer and Affirmative Defenses to the Complaint of Plaintiff, Eugene Scalia, states that all allegations not specifically admitted in the Complaint are denied and further states:

**I.**

1. Jurisdiction over this action is conferred on this Court pursuant to section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), and by 28 U.S.C. §§ 1331 and 1345.

**ANSWER:** Defendant admits the allegations contained in Paragraph 1.

**II.**

2. Defendant **ADVANCED DISPOSAL SERVICES SOLID WASTE MIDWEST, LLC** ("ADS"), doing business as Advanced Disposal, is now, and at all times material herein, was a limited liability company engaged in waste collection and management services within the state of Illinois. ADS maintains and conducts business at 2800 Shermer Road, Northbrook, IL 60062 ("Northbrook location"), within the jurisdiction of this Court.

**ANSWER:** Defendant admits the allegations contained in Paragraph 2 with the caveat that since the events described in the Complaint, Defendant's ultimate parent corporation merged with Waste Management, Inc. and is no longer doing business as Advanced Disposal.

3. Defendant was, at all times material herein, a "person," as defined by section 3(4) of the Act, codified at 29 U.S.C. § 652(4), and an "employer," as defined by section 3(5) of the Act, codified at 29 U.S.C. § 652(5).

**ANSWER:** Defendant admits the allegations contained in Paragraph 3.

**III.**

4. William Glass was employed by Defendant from at least March 24, 2014, to September 13, 2016, as a roll-off driver. Mr. Glass worked at Defendant's Melrose Park location from March 24, 2014, to approximately June 5, 2016, when he was transferred to the Northbrook location.

**ANSWER:** Defendant admits the allegations contained in Paragraph 4.

5. Mr. Glass was, at all times material herein, an employee who was employed by an employer as defined by sections 3(5) and 3(6) of the Act, codified at 29 U.S.C. § 652(5), (6).

**ANSWER:** Defendant admits the allegations contained in Paragraph 5.

6. On September 6, 2016, Mr. Glass wrote up in a driver vehicle inspection report a safety hazard consisting of a gap between the lift gate and truck bed of container truck #246002. Mr. Glass also reported his concern to his supervisor, Route Manager Trent Hasley. The condition was not fixed and Mr. Hasley assigned another driver to use container truck #246002.

**ANSWER:** Defendant admits in part and denies in part the allegations contained in Paragraph 6. Defendant admits that Mr. Glass completed a vehicle inspection report on container truck #246002 that alleged a safety hazard consisting of a gap between the lift gate and truck bed. Defendant further admits that Mr. Glass reported his concern to Mr. Hasley. Defendant admits that another driver used the truck after a mechanic had reviewed the allegations, including the alleged safety concern, and the driver had conducted an inspection of the vehicle. Defendant denies that the events described by the Paragraph all occurred on September 6, 2016, and that the condition Mr. Glass included in the report presented a safety hazard that required the truck to be taken out of service prior to being corrected .

7. On September 7, 2016, Mr. Hasley assigned Mr. Glass to operate a rear-load garbage truck, #244014, which Mr. Glass had never driven before, on a residential route.

**ANSWER:** Defendant admits the allegations contained in Paragraph 7.

8. On September 7, 2016, while operating rear-load garbage truck #244014, Mr. Glass injured his left pinky finger when a garbage can (or "toter") was thrown off the truck's tipper and hit his hand.

**ANSWER:** Defendant admits that Mr. Glass injured his left pinky finger on September 7, 2016, when his hand was struck by a toter that Mr. Glass had emptied into the truck using the truck's tipper. Defendant denies the characterization that the toter was "thrown off the truck's tipper."

9. Immediately after his injury occurred, Mr. Glass reported it to Mr. Hasley. Mr. Glass's injury was thereafter reported to Route Manager Michael Renbarger and Operations Manager Roger Peloquin. Mr. Glass was directed to write up an incident report before being transported to a medical clinic for treatment of his injury.

**ANSWER:** Defendant has insufficient information to admit or deny whether Mr. Glass "immediately" reported his injury to Mr. Hasley. Defendant admits the remaining allegations in Paragraph 9 but denies any suggestion that medical treatment was contingent upon the completion of an incident report.

10. As a result of the work-related injury, Mr. Glass received medical treatment and was only able to perform light-duty work on September 8, 9, and 12, 2016.

**ANSWER:** Defendant admits the allegations contained in Paragraph 10.

11. Defendant's employee handbook dictates when an injury occurs, management will review the injury, with the input of the involved employee, to determine "preventability." The employee handbook defines a preventable incident as "one in which the employee failed to do everything he/she possibly could to prevent the incident from occurring."

**ANSWER:** Defendant admits the allegations contained in Paragraph 11. However, Defendant further states that Mr. Glass was also subject to the Collective Bargaining Agreement between Defendant and Teamsters Local 731.

12. On or about September 7 or 9, 2016, Defendant interviewed Mr. Glass in Mr. Peloquin's office regarding Mr. Glass's injury. Mr. Glass was never taken to the actual truck on which he was injured to explain or demonstrate how the injury occurred.

**ANSWER:** Defendant admits that Mr. Glass discussed his injury and the events leading up to his injury in Mr. Peloquin's office but denies the remaining allegations contained in Paragraph 12.

13. On September 8, 2016, Defendant determined Mr. Glass's injury was "preventable," documented in a "Preventability Analysis."

**ANSWER:** Defendant admits that on September 8, 2016, it determined that the incident that resulted in Mr. Glass's injury was "preventable" and documented that in a "Preventability Analysis." Defendant denies the remaining allegations contained in Paragraph 13.

14. The following day, on September 9, 2016, Mr. Renbarger drafted an "Employee Incident Report" about the meeting with Mr. Glass in Mr. Peloquin's office.

**ANSWER:** Defendant admits that Mr. Renbarger drafted an "Employee Incident Report" that is dated September 9, 2016. Defendant denies that the document was solely about the meeting with Mr. Glass in Mr. Peloquin's office.

15. At all material times herein, Defendant utilized a "Compliance Hotline" employees could call to report work-related concerns, including safety issues.

**ANSWER:** Defendant admits the allegations contained in Paragraph 15.

16. On September 8, 2016, Defendant received an anonymous complaint on the "Compliance Hotline" reporting safety issues with multiple trucks at the Northbrook facility and that Route Manager Trent Hasley was aware of the issues but was not doing anything about them. The anonymous caller also reported Mr. Glass's safety concerns with the container truck (#246002), the assignment of another driver to operate the container truck after Mr. Glass reported it unsafe, and Mr. Glass's injury on a different truck. The caller recommended Mr. Hasley receive disciplinary action for knowingly putting drivers in harm's way.

**ANSWER:** Defendant admits in part and denies in part the allegations contained in Paragraph 16. Defendant admits the existence and alleged content of the anonymous complaint but denies that it received the complaint on September 8, 2016.

17. Human Resources Manager Jackie Doll investigated the hotline complaint by interviewing drivers and managers at the Northbrook location.

**ANSWER:** Defendant admits the allegations contained in Paragraph 17.

18. Ms. Doll is also responsible for reviewing final warnings, suspensions, and terminations across ADS's Midwest Region, including the Northbrook location.

**ANSWER:** Defendant admits that one of Ms. Doll's responsibilities is to review final warnings, suspensions and terminations that are brought to her attention for the Midwest Region, including the Northbrook location.

19. On September 9, 2016, Ms. Doll interviewed Mr. Glass regarding the anonymous hotline complaint. Mr. Glass reported his safety concerns about the container truck. Ms. Doll also asked Mr. Glass about his injury during this interview. Ms. Doll suspected Mr. Glass made the anonymous hotline complaint.

**ANSWER:** Defendant admits the allegations in the first two sentences of paragraph 19. Defendant further admits that Ms. Doll asked Mr. Glass about the events on the day of this injury during his interview but denies that she asked him about his injury. Defendant has insufficient information to admit or deny that Ms. Doll suspected that Mr. Glass made the anonymous complaint.

20. Defendant utilizes a progressive disciplinary policy. The progression of discipline begins with a written warning, followed by a suspension without pay (1-5 days depending on severity of the violation), and followed by discharge. The progressive disciplinary policy applies to employees on a rolling 12-month basis.

**ANSWER:** Defendant admits it uses a progressive disciplinary policy consistent with its Collective Bargaining Agreement with Teamsters 731 as alleged in Paragraph 20.

21. On September 13, 2016, Defendant terminated Mr. Glass, concluding his "preventable" injury warranted discipline, which was his third disciplinary action in the prior 12 months. Ms. Doll, Mr. Peloquin, and General Manager Steve Rooney were involved in the decision to terminate Mr. Glass.

**ANSWER:** Defendant admits that it terminated Mr. Glass on September 13, 2016, after first concluding that the September 7, 2016 incident was "preventable" and triggered disciplinary action, and subsequently determining that the disciplinary action was his third disciplinary action in the prior 12 months. Defendant denies that it disciplined Mr. Glass for his injury. Defendant

admits that Ms. Doll, Mr. Peloquin and General Manager Steve Rooney were involved in the decision to terminate Mr. Glass but denies such action was retaliatory.

22. On or about September 16, 2016, container truck #246002 (about which Mr. Glass had previously complained) was taken out of service to repair the gap between the lift gate and truck bed.

**ANSWER:** Defendant admits the allegations contained in Paragraph 22.

23. On September 28, 2016, Mr. Glass contacted OSHA regarding discrimination by ADS. On October 7, 2016, Mr. Glass timely filed a formal complaint with OSHA alleging Defendant discriminated against him in violation of section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1), by terminating him for engaging in protected activity.

**ANSWER:** Defendant has insufficient information to admit or deny the allegations contained in Paragraph 23 and therefore denies those allegations. Defendant is not required to and does not respond to any legal conclusions included Paragraph 23.

24. The Secretary subsequently investigated Mr. Glass's complaint in accordance with section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), and determined Defendant violated Section 11(c)(1) of the Act.

**ANSWER:** Defendant has insufficient information to admit or deny the allegations contained in Paragraph 24 and therefore denies those allegations. Defendant is not required to and does not respond to any legal conclusions included Paragraph 24.

**IV.**

25. As a consequence of the complaint Mr. Glass made to Defendant about the safety of the container truck, the report Mr. Glass made to Defendant about his workplace injury, and Defendant having perceived Mr. Glass filed the anonymous safety complaint, Defendant discriminated against Mr. Glass by terminating his employment. Defendant has failed and refused and continues to fail and refuse to reinstate Mr. Glass and compensate him for the time he should have continued to work for Defendant.

**ANSWER:** Defendant admits that it has refused to reinstate Mr. Glass or compensate him for time after his termination. Defendant denies all other allegations contained in Paragraph 25. Defendant terminated Mr. Glass for legitimate, non-discriminatory reasons.

26. By the facts described in Paragraphs 1 through 25 above, Defendant did discriminate and is discriminating against Mr. Glass because of his exercise of rights under, or related to, the Act. Defendant thereby did engage in, and is engaging in, conduct in violation of section 11(c) of the Act, 29 U.S.C. § 660(c).

**ANSWER:** Defendant denies the allegations contained in Paragraph 26. Defendant terminated Mr. Glass for legitimate, non-discriminatory reasons.

## PRAYER FOR RELIEF

**WHEREFORE**, cause having been shown, the Secretary prays for judgment:

A. Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, and those persons in active concert or participation with it, from violating the provisions of § 11(c) of the Act, 29 U.S.C. § 660(c);

B. Ordering Defendant to make William Glass whole by (1) offering reinstatement to Mr. Glass to his former position, or in lieu of reinstatement, providing him with front pay in an amount to be determined at trial; (2) reimbursing Mr. Glass for lost wages and benefits that resulted from his termination, with interest thereon from the date due until paid; and (3) expunging from all personnel and company records references to the circumstances giving rise to Mr. Glass's unlawful termination;

C. Ordering Defendant to make William Glass whole by providing compensation to reimburse for any costs, expenses, and/or other pecuniary losses he incurred as a result of Defendant's discriminatory actions;

D. Ordering Defendant to make William Glass whole by providing compensation for any non-pecuniary losses, including emotional pain and suffering;

E. Ordering the posting of notice for employees stating Defendant will not in any manner discriminate against any employee for engaging in activities protected by section 11(c) of the Act, 29 U.S.C. § 660(c);

F. Awarding the Secretary the costs of this action; and

G. Ordering such further relief as is appropriate and just.

**ANSWER:** ADS denies that either the Secretary or Mr. Glass is entitled to any relief, including the relief set forth in the unnumbered WHEREFORE paragraph.

**AFFIRMATIVE DEFENSES**

Advanced Disposal asserts the following affirmative defenses, reserving the right to supplement or amend these defenses as discovery proceeds.

**FIRST AFFIRMATIVE DEFENSE**

Defendant terminated Mr. Glass for legitimate, non-discriminatory reasons.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff fails to state a claim for which relief can be granted.

**THIRD AFFIRMATIVE DEFENSE**

The Plaintiff's claims are barred by laches.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's pursuit of this matter violates Defendant's right to due process

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part by the failure to mitigate damages.

**SEVENTH AFFIRMATIVE DEFENSE**

Mr. Glass's alleged damages resulted in whole or in part from a superseding intervening cause.

**EIGHTH AFFIRMATIVE DEFENSE**

The Court lacks jurisdiction to offer some or all of the relief requested by Plaintiff.

Respectfully submitted,

ADVANCED DISPOSAL SERVICES SOLID WASTE MIDWEST, LLC,

By: /s/ Anne S. Kenney
One of its attorneys

Anne S. Kenney
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Dated: February 1, 2021

**CERTIFICATE OF SERVICE**

I, Anne S. Kenney, hereby certify that on February 1, 2021, I electronically filed the foregoing **Advanced Disposal Services Solid Waste Midwest, LLC's Answer and Affirmative Defenses to Complaint of Milton Al Stewart** via the Court's CM/ECF system, which will deliver electronic notice of filing to all counsel of record.

/s/ Anne S. Kenney